**Kenneth HARRIS and Charlotte Harris, Plaintiffs,**

v.

**CITY OF KANSAS CITY, KANSAS, et al., Defendants.**

Civ. A. No. 87–2507–S.

United States District Court, D. Kansas.

Dec. 9, 1988.

Rosie M. Quinn, Rosie M. Quinn & Associates, Kansas City, Kan., for plaintiffs.

Maurice J. Ryan, Asst. City Atty., Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment. This case arises out of the arrest of plaintiffs by defendants Tim Fowler ("Fowler"), Rick Armstrong ("Armstrong"), and Richard Nelson ("Nelson"), officers of defendant Kansas City, Kansas Police Department. Plaintiffs bring this suit pursuant to 42 U.S.C. §§ 1981, 1983 and 1985. They also propound claims under state law for false arrest, assault and battery. Defendants seek summary judgment on all of plaintiffs' claims.[1]

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The uncontroverted facts for purposes of this motion are as follows.

On October 17, 1985, two women, Beverly Ragsdale ("Ragsdale") and Victoria Wright ("Wright"), drove their acquaintances Melvin Harris and Elmarries Mims to an address at 32nd & Freeman in Kansas City, Kansas. When they arrived at that address, Melvin Harris demanded money from Ragsdale, and when she refused, he struck her on the head with a gun. She managed to escape and she called the Kansas City, Kansas Police Department for assistance. However, Wright was not able to escape from the two men. When Officers Armstrong, Nelson and Fowler arrived on the scene and Ragsdale directed them to the house at 3102 Freeman, where they had stopped to let off Melvin Harris and Elmarries Mims, they approached the residence. That residence was occupied by plaintiff Kenneth Harris and his wife, Juanita. On the night of the incident, Kenneth Harris' sister, Charlotte Harris, was staying with Kenneth and Juanita Harris.

Officers Armstrong, Nelson and Fowler approached Juanita Harris, explained the situation to her, and asked for permission to search her house. She consented.[2] After the officers entered the home, but before they were able to begin their search, plaintiff Kenneth Harris confronted them and asked that they leave the home. However, Mr. Harris did not identify himself as the occupant of the home. He did meet the description given by Ragsdale of the suspect Melvin Harris; in fact, the suspect was plaintiff Kenneth Harris' brother. A verbal confrontation ensued and Officer

---

1. Despite plaintiffs' contentions, the causes of action stated in Counts III, IV, VII and VIII are in fact state law claims and not additional claims under section 1983. *See infra* section I.

2. There is some evidence that the officers threatened to obtain a search warrant and "tear the house apart", but there is no evidence this statement was made in the presence of Juanita Harris.

Armstrong arrested Kenneth Harris for obstruction. Plaintiff Charlotte Harris then verbally challenged the arrest of Kenneth Harris; she was ultimately placed under arrest as well. A physical confrontation took place between the officers and Kenneth and Charlotte Harris. Defendants contend that Kenneth and Charlotte Harris resisted the officers' attempts to handcuff them and that in the struggle, the officers struck both arrestees. Plaintiffs allege that Officer Armstrong beat Kenneth Harris on his legs and feet with a club before handcuffing him. They further allege that Officer Nelson clubbed Kenneth Harris and then handcuffed him, and that after being cuffed, Officer Nelson kicked Kenneth Harris in the face. Plaintiff Charlotte Harris contends that in her efforts to prevent the officers from beating her brother, Officer Nelson struck her in the head.

This action was filed on October 16, 1987.

## I. State Law Claims for Assault, Battery, and False Imprisonment

■ Defendants first ask for summary judgment on Counts III, IV, VII and VIII of plaintiffs' complaint on the grounds that each of those claims are barred by the statute of limitations. The court must first address the question of whether the claims stated in those counts are actually pursuant to state law or are instead additional claims under 42 U.S.C. § 1983, as plaintiffs allege. Defendants correctly point out that Counts I and V of plaintiffs' complaint already allege federal claims for excessive force and false arrest. Therefore, the causes of action stated in Counts III, IV, VII and VIII, asserting assault, battery and false imprisonment, are either duplicative or are in fact state law claims.

If those counts are in fact duplicative, they will be dismissed as such. However, if they are state law claims, they are barred by the applicable statute of limitations. K.S.A. 60–514(2) provides that an action for assault and battery or false imprisonment must be brought within one year. This case was not filed until nearly two years after the incident giving rise to the cause of action. Therefore, the state law claims are barred by the statute of limitations and defendants' motion for summary judgment on those counts will be granted.

Since the court will grant defendants' motion for summary judgment on Counts III, IV, VII and VIII on grounds that those counts were filed outside the applicable statute of limitations, it will not be necessary for the court to address defendants' argument that the state claims should be barred because of lack of notice, pursuant to K.S.A. 12–105b.

## II. Section 1981, 1983 and 1985 Claims

### A. Section 1981

■ Title 42, United States Code, Section 1981 provides that:

All persons within the jurisdiction of the United States have the same rights in every state and territory ... to the full and equal benefit of laws and proceedings for the security of persons and property as enjoyed by white citizens, and are subject to like punishment, pains, penalties, taxes, licenses and exactions of any kind, and to no other.

In order to show a violation of section 1981, the plaintiffs must establish that actions taken against them were racially motivated. *Washington v. Davis*, 426 U.S. 229, 246, 96 S.Ct. 2040, 2050, 48 L.Ed.2d 597 (1976). Defendants contend that plaintiffs have wholly failed to present any evidence which would indicate that the officers' actions on October 17, 1985, were racially motivated. Plaintiffs respond by pointing out that racial animus is shown by the fact that they are both black and all the police officers involved in the incident are white. The court rejects plaintiffs' argument; the races of the persons involved, standing alone, are absolutely no evidence of racial animus between those parties. The court is aware of no authority which states otherwise and defendants do not cite to any. Plaintiffs also allege that Officer Fowler testified at his deposition that it is acceptable to use force to arrest blacks. A cursory review of that deposition testimony reveals that in fact what Officer Fowler stated was that it was acceptable to use an

amount of force reasonable to effect an arrest, no matter what the race of the person being arrested. Since plaintiffs have offered no competent evidence to show a racial discriminatory motive on the part of the arresting officers, defendants' motion for summary judgment on the section 1981 claim will be granted.

B. *Section 1983*

1. Claims against the City of Kansas City, Kansas, Kansas City, Kansas Police Department, and Police Chief Allen Myers.

■ Defendants argue that the City of Kansas City, Kansas, the Kansas City, Kansas Police Department, and Police Chief Allen Myers are entitled to qualified immunity on the section 1983 claims and should be granted summary judgment. In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality is liable when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035. Defendants contend that plaintiffs are without facts to show any policy or practice on the part of the City of Kansas City, Kansas, the Kansas City, Kansas Police Department or Police Chief Allen Myers sufficient to overcome qualified immunity. Plaintiffs respond by alleging that a failure to discipline past wrongful acts may imply the existence of an unconstitutional policy or practice. Plaintiffs go on to point out that Officers Armstrong and Fowler have had several complaints filed against them by various citizens.

However, a closer examination of the facts reveals that all the complaints filed against Officer Armstrong were completely dissimilar to those made here, since none of those alleged the use of excessive force. Officer Fowler had one claim of excessive force filed against him; however, since an independent witness supported Officer Fowler's version of the facts, that complaint was ruled unfounded. There is no competent evidence to show that the Police Department has failed to discipline these two officers in the past.

Plaintiffs go on to contend that out of a total of thirty-nine administrative complaints filed since 1983 against officers of the Kansas City, Kansas Police Department, not one complaint has been designated as founded. However, this allegation again provides no evidence of failure to discipline, because administrative complaints do not address claims of excessive force. Again, this evidence is incompetent to counter a summary judgment motion.

Finally, plaintiffs contend that other specific instances of individual charges made against officers exist, but the plaintiffs have been unable to obtain such information through defendants in the discovery process. The court rejects such a complaint. No motion to compel was filed in this case and the discovery cut off has long since past. The court will not deny a motion for summary judgment solely on the basis of plaintiffs' assertion that information exists which plaintiffs do not have. *Anderson* and *Celotex* require more than that, and plaintiffs' allegations of inadequate discipline are rejected.

Plaintiffs also argue that the defendants have a policy of inadequately training their police officers and that such a policy is sufficient to abrogate the qualified immunity of the City of Kansas City, Kansas, the Kansas City, Kansas Police Department and Chief Allen Myers. His allegation is based solely on the fact that the City does not require a retraining program for officers disciplined for use of excessive force. This allegation alone is insufficient to establish a policy of inadequate training. The court notes that the Kansas City, Kansas Police Department requires nearly twice the number of hours mandated by the State of Kansas for yearly training. The court is not at liberty to say whether additional retraining should be required for officers disciplined for use of excessive force. Without evidence from an expert or some other source, plaintiffs' allegation of inadequate training is baseless.

Finally, plaintiffs contend that the Kansas City, Kansas Police Department has a policy of arresting suspects without probable cause. More specifically, they allege that there is a custom or policy within the department that if an officer strikes an individual, the officer must arrest that individual. Plaintiffs offer the testimony of two officers who testified in an unrelated section 1983 case in this court in which the City of Kansas City, Kansas, the Kansas City, Kansas Police Department and Chief Allen Myers were defendants. Plaintiffs allege that those officers testified there is an unwritten policy or custom within the department that officers are to arrest a person once he is struck. A review of the relevant transcripts reveals that plaintiffs have mischaracterized that testimony. In fact, the witnesses directly contradict plaintiffs' allegation by stating that such a policy would not be acceptable to the department. Plaintiffs have shown the court no competent evidence of a policy within the department to arrest without probable cause, and this argument is likewise rejected.

Since the plaintiffs have presented no competent evidence of an unconstitutional policy or practice by the City of Kansas City, Kansas, Kansas City, Kansas Police Department and Chief Allen Myers, those defendants' motion for summary judgment on the section 1983 claims will be granted.

### 2. Claims Against Officers Armstrong, Nelson and Fowler

a. Defendants Armstrong, Nelson and Fowler also seek qualified immunity on the section 1983 claims against them on the grounds that their entry into and search of the Harris home did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed. 2d 523 (1987). In *Anderson,* the Court held that despite an unlawful warrantless search, an officer could be entitled to qualified immunity if a reasonable officer could have believed the search was lawful in light of the clearly established law and the information possessed by the searching officer. Plaintiffs contend that the officers warrantless search of the Harris residence and subsequent warrantless arrests of plaintiffs violated clearly established law and the officers are therefore not entitled to qualified immunity.

Defendants first contend that the initial search of the Harris residence did not violate clearly established law because consent was effectively obtained from Juanita Harris. A search is not unconstitutional if consent is voluntarily given to conduct the search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 223, 93 S.Ct. 2041, 2045, 36 L.Ed. 2d 854 (1973). In the present case, the uncontroverted facts plainly show that voluntary consent was obtained to search the Harris home. Juanita Harris did tell the officers they could search the premises and there is no evidence that she heard one of the officers threaten to return with a warrant and "tear the house apart." Therefore, the initial search did not violate clearly established law and qualified immunity will attach to the officers' initial search of the Harris residence.

Even if Juanita Harris' voluntary consent was not obtained, the initial search of the home would still not violate clearly established law. An officer is allowed to enter a residence and conduct a search without a warrant if exigent circumstances exist. Exigent circumstances exist when (1) an officer has reasonable grounds to believe there is an immediate need to protect the officer, the officer's life, the lives of others or their property or that of another; (2) the search is not motivated by an intent to arrest or seize evidence; and (3) there is some reasonable basis to believe an emergency exists. *Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967). Plaintiffs simply contend that a question of fact is presented as to whether the officers had reasonable grounds to believe an emergency existed and a search was needed to protect the lives or property of others. This is not sufficient to withstand defendants' challenge. The officers were called to the scene and alerted to the fact that there was a possible kidnapping in progress. An eye witness told the police that she had

dropped off the suspects at the residence later identified as that occupied by Kenneth and Juanita Harris. A reasonable officer could have believed that in such circumstances he was justified in searching that residence without a warrant. *See Anderson,* 107 S.Ct. at 3040. Therefore, even if the initial search of the Harris residence was not conducted with the valid consent of Juanita Harris, the officers would be entitled to qualified immunity since they were justified in believing that exigent circumstances necessitated the search.

Since plaintiffs have failed to show facts sufficient to defeat defendants' motion for summary judgment, the motion will be granted to the extent plaintiffs sought relief for the entry and search of the home.

b. Plaintiffs next claim that their arrests were unlawful in three ways. First, they contend their arrests were unlawful since the initial entry and search were unlawful; second, they contend their arrests were unjustified because they were challenging unlawful police activity; finally, they contend that excessive force was used to effect the arrest. The court has already discussed the legality of the initial entry into the Harris residence. *See supra* § II(B)(2)(a). Plaintiffs are entitled to qualified immunity since a reasonable officer would have believed that the entry and search were valid under the fourth amendment. *Anderson,* 107 S.Ct. at 3040. Since consent and/or exigent circumstances would lead a reasonable officer to believe that the search was valid, plaintiffs' argument on that point fails.

■ Plaintiffs further contend that their arrests were unlawful because they were validly attempting to challenge unlawful police activity. *See Dunn v. Tennessee,* 697 F.2d 121, 126 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). However, Kenneth Harris was not challenging unlawful police activity, because when he was arrested, he was challenging the officers entry into his home. The court has already determined that that entry was lawful. Further, Charlotte Harris was not challenging unlawful police activity, because she contested the lawful arrest of Kenneth Harris. The uncontroverted facts for purposes of this motion show that it appeared to Officer Armstrong that Kenneth Harris was attempting to intimidate him from performing his duties as a police officer in conducting a search of the premises. While plaintiffs contend that Harris was not in fact challenging or attempting to intimidate the officer from performing his duties, the uncontroverted facts at least show that it appeared that way to Officer Armstrong.[3] Since both the initial entry and the arrest of Kenneth Harris were justified, this argument is rejected.

■ Plaintiffs finally claim their civil rights were violated when the officers used excessive force to effect their arrests. Here, the facts become hotly contested. Defendants claim that the officers used only that amount of force necessary to effect the arrests, and they point out that both Kenneth and Charlotte Harris violently resisted their arrests. Defendants further contend that they did not strike or otherwise physically abuse Kenneth Harris after he was placed in handcuffs. The plaintiffs, on the other hand, contend that their only actions were to verbally question the officers' presence in their residence and to question their arrests. Charlotte Harris does concede that she struggled with one of the officers when he attempted to place her in cuffs. Plaintiffs also contend that once Kenneth Harris was placed in handcuffs, the officers continued to kick and beat him. Since the parties' versions of the facts are in such opposition, it is impossible for the court to grant summary judgment to the extent plaintiffs claim excessive force was used to effect their arrests. However, the court notes that the charges

---

**3.** See defendants' uncontroverted fact #35, which states that it appeared to Officer Armstrong that Kenneth Harris was attempting to impede the officer in the performance of his duties. While plaintiffs attempted to controvert that fact by arguing what Kenneth Harris actually did, they do not controvert the fact that Kenneth Harris' actions *appeared* to be intimidating to Officer Armstrong.

of excessive force are made only against Officers Nelson and Armstrong; plaintiffs do not allege in their statement of uncontroverted facts that Officer Fowler used any excessive force against them. Therefore, summary judgment will be granted in favor of Officer Fowler.

■ c. Plaintiffs next claim they were deprived of their first amendment rights without due process. They contend that they were arrested solely for protesting the officers' activity and therefore their first amendment rights were violated. This argument is totally frivolous. The officers were entitled to arrest the Harrises for attempting to interfere with the officers' efforts to carry out their legal duties. Again, the uncontroverted facts show that Officer Armstrong felt Kenneth Harris was attempting to intimidate the officers, and that Charlotte Harris physically attempted to prevent Kenneth Harris' arrest. The arrests were valid, *see supra* § II(B)(2)(b), and plaintiffs' first amendment rights were not violated.

d. Plaintiffs' next contention is that their fifth amendment rights were violated because the officers' entry into their home violated their privacy. Plaintiffs cite to *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the penumbral right to privacy which that case and its progeny discussed. The court will reserve comment on this legal theory and state only that since the court has already determined that the entry into the Harris residence was lawful or at least did not violate clearly established law, no fifth amendment right was violated.

e. Plaintiff's contention that their sixth amendment rights were violated needs only a short comment. They argue their sixth amendment rights were violated because they were charged without probable cause. The court has already determined that the arrests were valid, *see supra* § II(B)(2)(b), and this argument is soundly rejected.

f. Plaintiffs' eighth amendment argument is also disposed of easily. The cruel and unusual punishment clause of the eighth amendment applies only after a defendant has been convicted of a crime and subjected to imprisonment. *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986). It obviously does not apply to plaintiffs' case and any conditions to which they were subjected after arrest.

g. Finally, plaintiffs claim their fourteenth amendment rights were violated in that the illegal entry into the Harris home, their arrests and the excessive force used to effect those arrests violated due process or deprived them of their liberty. This claim will survive summary judgment only to the extent it alleges excessive force. *See supra* § II(B)(2)(b). In all other respects, the claim will fail.

## C. *Section 1985*

■ In order to state a valid claim under section 42 U.S.C. § 1985, plaintiffs must establish that defendants conspired to deprive them or any class of persons of equal protection of the law or equal privileges and immunities under the laws, that they took some action in furtherance of that conspiracy, and that injury or deprivation of a right or privilege resulted. *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983). Plaintiffs contend that the officers conspired to deprive them of their rights. The only "evidence" they offer of this alleged conspiracy is a "policy or custom of unlawful arrest ... by subjecting them to arrest on a less than probable cause basis." *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at 23. The court has already determined that there is no evidence of a policy or custom within the department of subjecting persons to arrest with less than probable cause. *See supra* § II(B)(1). No other evidence is offered in support of this conspiracy; plaintiffs only offer bald assertions that a conspiracy exists. These assertions alone are certainly not sufficient to withstand a summary judgment motion under the standards set out in *Anderson* and *Celotex*. Therefore, defendants' motion for summary judgment on the section 1985 claim will be granted.

In summary, plaintiffs have failed to meet their burden in the face of defendants' summary judgment motion on all but one of their claims. The only claim remaining will be the section 1983 claim against Officers Nelson and Armstrong, alleging excessive force. Summary judgment will be granted in favor of defendants Armstrong and Nelson on all other claims against them. Summary judgment will be granted on all claims brought against defendants the City of Kansas City, Kansas, the Kansas City, Kansas Police Department, Chief Allen Myers, and Officer Fowler.

### III. *Other Pending Matters*

█ Plaintiffs' counsel sought numerous extensions of time within which to file her response to defendants' motion for summary judgment. Defendants' counsel opposed the second and third requests for extensions of time and also sought reconsideration of this Court's Order granting the requests for extensions of time. Defendants' counsel notes in his opposition that plaintiffs' counsel failed to consult with him before seeking the extensions. Local Rule 114 does not in fact require counsel to consult with opposing counsel before seeking an extension. However, it does require counsel to state in her motions for extensions of time whether or not she has consulted with opposing counsel. Plaintiffs' counsel failed to state whether she had consulted with opposing counsel when she sought her third extension of time, and this omission was overlooked by the court. The court will deny defendants' motion for reconsideration, but it strongly admonishes plaintiffs' counsel of the importance of complying with all deadlines imposed by the court. Plaintiffs' counsel is further admonished that the more desirable practice in this court is to consult with opposing counsel before seeking an extension of time.

█ Plaintiffs' counsel certainly speaks out of turn when, after being challenged for her failure to consult with opposing counsel before seeking extensions of time, she then challenges defendants' counsel's timeliness in filing his reply brief on the motion for summary judgment. Plaintiffs' counsel incorrectly states that the reply brief was filed out of time. In fact, if plaintiffs' counsel will look at the applicable Local Rules and Federal Rules of Civil Procedure, she will note that defendants' reply was in fact timely. Local Rule 206(b) provides the moving party five days after the service of memorandum in opposition to file a written reply memorandum. Federal Rule of Civil Procedure 6(a) provides that "[w]hen the period of time prescribed or allowed [for filing a motion] is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Rule 6(e) provides that "[w]henever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period."

On September 12, 1988, plaintiffs' attorney mailed the copy of her Memorandum in Opposition to defendants' counsel. Federal Rule of Civil Procedure 6(e) provides that three days should be allowed for mailing. This takes us up to September 15, 1988, which was a Thursday. Counting then five days, excluding Saturday and Sunday, the reply was due Thursday, September 22, 1988. Defendants' reply was actually one day early; it was filed September 21, 1988. The court admonishes plaintiffs' counsel to educate herself as to the Local Rules and the Federal Rules of Civil Procedure and to diligently follow the court's deadlines in the future.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted in full on all claims against the defendants the City of Kansas City, Kansas, the Kansas City, Kansas Police Department, Chief Allen Myers, and Officer Fowler. Summary judgment is granted in part and denied in part as to Officers Armstrong and Nelson, as more fully set out in this Memorandum and Order. IT IS FUR-

**1464**

THER ORDERED that defendants' motion for reconsideration is denied.