Martin **BIBUM**

v.

**PRINCE GEORGE'S COUNTY, et al.**

**No. CIV. A. DKC 98–3684.**

United States District Court,
D. Maryland.

Jan. 13, 2000.

---

Sean Robert Day, Law Office, College Park, MD, for Plaintiff.

John Anthony Bielec, County Attorney's Office, Upper Marlboro, MD, for Defendant Prince George's County.

Sean D. Wallace, Deputy County Attorney, John Anthony Bielec, County Attorney's Office, Upper Marlboro, MD, for Defendant J. Zelaya.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Pending before the court in this case alleging excessive force by a police officer in the course of an arrest is Defendants' motion for summary judgment. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court shall DENY the motion with respect to Count VII, but GRANT the motion with respect to all other counts of the amended complaint.

## I. *Background*

On the night of September 10, 1997, Plaintiff, Martin Bibum, a black man born in Cameroon, Africa, was approached by a uniformed Prince George's County police officer in the parking lot of his apartment complex. Bibum had just exited his car and was making his way to the trunk. The officer, Julio Zelaya, began questioning Bibum regarding his presence in the parking lot because, according to Officer Zelaya, Bibum was walking suspiciously[1] between the parked cars in the lot. Bibum alleges that he fully cooperated with Officer Zelaya.

1. Officer Zelaya claims Bibum was under suspicion because there had been a series of recent vehicle break-ins at or near Bibum's residence, and he observed Bibum looking into several vehicles as he was walking between the cars.

2. Bibum went to the emergency room upon his release from police custody, and claims that he suffered head pain for three months following the incident and neck pain for six months.

At some point during the questioning, Bibum placed his hands in his pants pockets. Officer Zelaya says he observed a bulge in Bibum's pocket. Bibum claims that Officer Zelaya told him to remove his hands from his pockets, and he did. At that point, Bibum alleges that Officer Zelaya grabbed his gun, shouted "Don't let me f— you up!", and instructed Bibum to place his hands on the police vehicle. Bibum alleges that after he placed his hands on the car, Officer Zelaya struck him in the back of the neck with his fist, threw him to the pavement, handcuffed him, and then "smashed" Bibum's head onto the pavement with his knee. Officer Zelaya then placed Bibum under arrest. According to Bibum, another officer drove by as Zelaya was placing him in the police car. Bibum explained to the other officer that he had been beaten, and asked for help. After the other officer left the scene, Bibum alleges that Zelaya retaliated against him by pressing his forearm into Bibum's neck.[2] Bibum was charged with second degree assault, disorderly conduct and resisting arrest. The charges, however, were placed on the *stet* docket.

On September 23, 1998, Bibum filed a complaint and motion to entertain suit[3] in the Circuit Court for Prince George's County. The case was thereafter removed to this court on the basis of federal question jurisdiction. Bibum's amended complaint contains nine counts. Counts one through five allege state law claims for assault (count one), assault and battery (counts two and four), false arrest (count three) and malicious prosecution (count

3. Plaintiff sought a waiver of the notice required by section 5–304 of the Courts & Judicial Proceedings Article of the Maryland Code to maintain an action against a local government or its employees. Bibum did not strictly comply with the notice requirements set forth in the statute, but argued in his motion to entertain suit that his suit should be allowed because he substantially complied with the statute.

five). Counts six and seven are § 1983 claims for violations of Bibum's federal constitutional rights,[4] and counts eight and nine allege violations of Maryland's Declaration of Rights, Articles 24 and 26. Defendants have filed a motion for summary judgment as to all counts.

## II. *Summary Judgment Standard*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R.Civ.P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving part. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily ren-

ders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. *Analysis*

### A. *Section 1983 Claims Against Officer Zelaya* [5]

Bibum's complaint contains two counts alleging a right to recovery under 42

---

4. Count seven is against Officer Zelaya only. All other counts are against both defendants.

5. Bibum has conceded the County's motion for summary judgment as to Count VI of the complaint.

U.S.C. § 1983. Count VI alleges that Officer Zelaya assaulted, arrested and prosecuted Bibum because of his race, color and national origin in violation of the Fourteenth Amendment of the constitution. Count VII alleges that Officer Zelaya violated his rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures by stopping him without a reasonable articulable suspicion that he had committed or was about to commit a crime, arresting and imprisoning him without probable cause, and using excessive force in effecting his arrest.

■ The court will grant summary judgment on Plaintiff's claim under the Fourteenth Amendment for racial discrimination (Count VI) because Bibum has presented nothing more than conclusory allegations that his race played a part in Officer Zelaya's alleged conduct. Bibum essentially argues that racial discrimination can be inferred from the fact that Officer Zelaya is Caucasian and he is an African–American man with a very dark complexion. This, however, is insufficient to prove a prima facie case of race discrimination. *See Ford v. Wilson*, 90 F.3d 245, 248–49 (7th Cir.1996) (Posner, J.) (affirming grant of summary judgment in § 1983 action, holding that difference in race between traffic stop detainee and police officer is, standing alone, insufficient to establish prima facie case of racial discrimination); *Harris v. City of Kansas City*, 703 F.Supp. 1455, 1458–59 (D.Kan. 1988) (holding evidence that arrestees were black and arresting officers white insufficient to show that arrests were racially motivated). There is simply no evidence that Bibum's race was a factor in Officer Zelaya's conduct, and summary judgment is therefore appropriate.

■ Plaintiff, however, will proceed to trial on his Fourth Amendment excessive force and false arrest claims, as genuine issues of fact exist regarding probable cause to arrest Bibum and whether the force used by Officer Zelaya in effecting the arrest was excessive. The court rejects Officer Zelaya's argument that he is entitled to summary judgment on the Fourth Amendment excessive force claim because the physical injuries Bibum complains of were *de minimis*. As explained below, the *de minimis* injury rule is inapplicable to Fourth Amendment excessive force claims.

■ Officer Zelaya relies on *Taylor v. McDuffie*, 155 F.3d 479 (4th Cir.1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999), in support of his argument that Bibum must produce evidence that the physical injuries he suffered were more than *de minimis*. *Taylor*, however, involved a claim of excessive force during the period of pretrial detention, not in the course of an arrest. Excessive force claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment. *Id.* at 483; *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997) (en banc). Claims of excessive force during the course of an arrest, however, are governed by the Fourth Amendment. *Riley*, 115 F.3d at 1161 (citing *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

■ Among the liberty interests protected by the Due Process Clause is the right to be free from physical punishment. *Ingraham v. Wright*, 430 U.S. 651, 673–74, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("It is fundamental that the state cannot hold and physically punish an individual except in accordance with due process of law."). Thus, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865; *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment

of the detainee."). The rationale for the *de minimis* injury requirement in an excessive force case brought by a pretrial detainee, is that a plaintiff who cannot show he has suffered some minimal level of physical injury cannot show a violation of his right to be free from physical punishment without due process of law. *Riley*, 115 F.3d at 1167 (*De minimis* physical injuries "cannot be squared with [a plaintiff's] need to demonstrate excessive force amounting to punishment. Punishment must mean something more than trifling injury or negligible force."); *cf. Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir.1994) (en banc) (prisoner claiming excessive force in violation of Eighth Amendment right to be free from cruel and unusual punishment must show more than *de minimis* injury).

■ The Fourth Amendment, on the other hand, protects citizens from unreasonable search and seizure. The right infringed by the use of excessive force in the course of an arrest is the right to be free from unreasonable seizure, not the right to be free from physical punishment without due process. *See Graham*, 490 U.S. at 393–94, 109 S.Ct. 1865. Thus, the inquiry under the Fourth Amendment in an excessive force case is whether the degree of force used by the officer was " 'objectively reasonable' in light of the facts and circumstances confronting [him]." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865; *compare Bell*, 441 U.S. at 535, 99 S.Ct. 1861 (in Fourteenth Amendment due process claim for excessive force, the inquiry is whether the degree of force used amounts to punishment of the detainee). Proper application of the reasonableness standard requires looking at "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–

9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). While the degree of injury inflicted may be evidence of the amount of force used in effecting the arrest, and thus the reasonableness of the seizure, it is never determinative of the question whether there has been a constitutional violation. *See Patrick v. City of Detroit*, 906 F.2d 1108, 1114–15 (6th Cir.1990) (rejecting extent of injury as a crucial factor in Fourth Amendment excessive force claim, and holding district court's failure to consider the extent of injury not erroneous); *Bass v. Robinson*, 167 F.3d 1041, 1046 n. 1 (6th Cir.1999) ("A factor that is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment is the extent of injury inflicted. This factor is relevant to a claim brought under the Eighth Amendment for cruel and unusual punishment."). As long as some actual injury is shown, be it physical or otherwise, a plaintiff may recover upon showing the degree of force used in effecting his arrest was unreasonable. *See Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (§ 1983 damages may include compensation for such injuries as personal humiliation and mental anguish and suffering); *Pembaur v. City of Cincinnati*, 882 F.2d 1101, (6th Cir.1989) ("The injury need not be a physical one. Damages for pain and suffering, mental anguish, and the like are available [in § 1983 actions] to the extent that actual injury has been proved.").

## B. *State Law Tort Claims*

With regard to the state law tort claims, including the state constitutional torts, the court must consider the preliminary issue of Bibum's failure to comply with the notice provision of the Local Government Tort Claims Act (LGTCA). Md.Code Ann., Cts. & Jud. Proc. § 5–304 (1998); *see Ashton v. Brown*, 339 Md. 70, 107 n. 19, 660 A.2d 447, 465 n. 19 (1995) (holding that the LGTCA applies to constitutional torts). Defendants argue that Bibum's state law tort claims are barred by his

failure to provide notice of his claim in accordance with the LGTCA. Plaintiff argues he should be permitted to proceed with his suit because he substantially complied with the notice requirements or, alternatively, because he had good cause for not complying with the statute.

■■■ Section 5–304(a) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Subsection (b) of the statute provides that in Prince George's County "the notice shall be given in person or by certified mail, . . . by the claimant or the representative of the claimant, to the county solicitor or the county attorney." Cts. & Jud. Proc. § 5–304(b). The notice is a condition precedent to the right to maintain an action for damages, *Grubbs v. Prince George's County,* 267 Md. 318, 320–21, 297 A.2d 754, 755–56 (1972) (citing *Cotham v. Board of County Comm'rs,* 260 Md. 556, 563, 273 A.2d 115 (1971); *Neuenschwander v. Washington Suburban Sanitary Comm'n,* 187 Md. 67, 78, 48 A.2d 593 (1946)), and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action. *Madore v. Baltimore County,* 34 Md.App. 340, 342, 367 A.2d 54, 56 (1976).

■■■ The notice requirement can be met by substantially complying with the provisions of the statute. *See Loewinger v. Prince George's County,* 266 Md. 316, 317–18, 292 A.2d 67, 68 (1972). Thus, in *Jackson v. Board of County Commissioners,* 233 Md. 164, 195 A.2d 693 (1963), the Maryland Court of Appeals held that a notice delivered by ordinary mail, not in person or by registered mail as required by the statute, that was actually received by the county within the statutory period satisfied the notice provision. *Id.* at 168, 195 A.2d at 695 ("If the purpose of the

statute is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically.").

■■■ However, when the notice does not apprise the proper officials that the Plaintiff is pursuing a claim, there is not substantial compliance. In *Loewinger v. Prince George's County,* the Plaintiff sued the county when she was injured during a medical test at the county hospital. The plaintiff alleged compliance with the notice requirement "in that written reports and records were made regarding the incident by various agents, servants and employees of the County employed at the hospital, including the hospital administrator, from their own investigation and the complaints of [the plaintiff]." *Loewinger,* 266 Md. at 317, 292 A.2d at 68. She also alleged that she was called by the county's tort liability carrier a week after the occurrence, and that within a month after the injury she sent written notice of the claim to the hospital's insurer. On these facts, the court held there was not substantial compliance with the notice provisions of the statute because notice had not been given to the county officials designated in the statute. The court noted that although substantial compliance may satisfy the statutory requirement, "[t]his is not to say that any information at all, conveyed to anyone connected with the County, is sufficient." *Id.* at 318, 292 A.2d at 68. The court stated:

> Lacking here was any direct notice whatever to the County Commissioners or Council.[6] That the hospital authorities knew about an accident and the liability carrier investigated the injury and received a communication from plaintiff's attorney informing it of his representation, is insufficient compliance with the statute.

*Id.*

■■■ Bibum claims he substantially complied with the notice provision by com-

---

6. The predecessor statute to the LGTCA at issue in *Loewinger* designated the County Commissioners or County Council as those to whom notice was to be sent.

pleting a "Prince George's County Police Department Complaint Against Police Practices" form and mailing it, by regular mail, to either the police headquarters or the police internal affairs department within a month after his arrest. However, the statute requires that notice be sent to the Prince George's County attorney, and there was no direct notice the county attorney. Sending the complaint form to the police department does not meet the substantial compliance test under *Loewinger*. Thus, the court finds that Bibum did not substantially comply with the notice provisions of the LGTCA.

 Bibum next argues that if he did not substantially comply with the LGTCA's notice provision, the notice requirement should be waived because he had good cause for not complying. Section 5-304(c) of the LGTCA provides for waiver of the notice requirement when the plaintiff can show good cause for not complying with the statute, unless the defendant can affirmatively show that its defense has been prejudiced by the lack of required notice. The Maryland legislature did not define what constitutes good cause; rather it committed that determination to the discretion of the court. *Madore*, 34 Md.App. at 344, 367 A.2d at 57. "[T]he test for [the] existence [of good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Id.* at 345, 367 A.2d at 57 (quoting *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370 (1948)). Ignorance of the statutory requirement does not constitute good cause. *See Williams v. Montgomery*

*County*, 123 Md.App. 119, 134, 716 A.2d 1100, 1107 (1998), *cert. granted*, 352 Md. 310, 721 A.2d 989 (1998); *Olshonsky v. Maryland Nat'l Capital Park & Planning Comm'n*, 1995 WL 479845, at *4 (4th Cir. Aug. 15, 1995).

 When Bibum went to the Prince George's County police station to complain about Officer Zelaya he was given a complaint form, which he completed and filed, but was not advised by the police that separate action would be required to preserve his right to sue the county or its .employees. This, Bibum claims, was "misleading and deceptive," and would lead a reasonable person to believe that any notice requirement would be satisfied by returning the completed form. Bibum asserts that because he was misled and deceived, he had good cause for not complying with the statutory notice requirement. The court, however, does not agree that Bibum was deceived. There is no allegation of an affirmative misrepresentation by police department employees, nor does the court believe there is an affirmative duty on the part of the police department to provide unsolicited advice (or solicited advice for that matter) to complainants regarding the steps they must take to preserve a claim against the county or one of its employees.

 That Bibum simply did not know about the formal notice requirement of the LGTCA does not constitute good cause for his failure to comply. An ordinarily prudent person in a similar situation would have made his own investigation into the existence of any formal notice requirements or consulted an attorney on the matter.[7] Thus, the court finds that good

---

7. Bibum waited over ten months to consult an attorney regarding a suit against Officer Zelaya and the County, even though, as evidenced by the contents of the complaint Bibum filed with the Prince George's County police department less than a month after the incident, Bibum clearly knew he had a basis for filing a civil claim against Officer Zelaya. "The very purpose of the court's discretion [with regard

to waiving the notice requirement] is to permit the court to accomplish substantial justice under varying circumstances, giving due regard to the reason for the requirement, and the rights of the parties." *Madore*, 34 Md. App. at 344, 367 A.2d at 57. In this case, substantial justice would not be achieved by waiving the notice requirement for a plaintiff

566

cause does not exist for waiving the LTGCA's notice requirement. *See Olshonsky,* 1995 WL 479845, at *4 (plaintiff who believed his statement in accident report detailing time, place, and cause of injury was sufficient to preserve right to sue was not entitled to waiver of notice provision because he "made no effort whatsoever to verify the relevant Maryland law or to preserve his claim," and "ignorance of the statutory requirement does not constitute good cause"); *Martin v. City of Biddeford,* 568 A.2d 1103, 1105 (Me.1990) ("Neither [plaintiff's] mistaken belief that the District Attorney was acting on his behalf, nor his ignorance of his rights and duties under the [Maine Tort Claims] Act, constitutes good cause excusing him from filing timely notice of his claim."); *Turkenitz v. City of New York,* 213 A.D.2d 266, 624 N.Y.S.2d 127, 127 (App.Div.1995) ("Plaintiff's lack of fluency in English and ignorance of the law are not acceptable excuses for failing to serve a timely notice of claim."); *cf. Kaplan v. Bach,* 36 Md. App. 152, 158–59, 373 A.2d 71, 76 (1977)(rejecting argument that default judgment should be set aside on the grounds that defendant was not represented by counsel, did not know the law, and was relying on plaintiff's counsel to advise him of developments in the case, stating that "[a]ppellant ... has no one to blame but himself for his predicament since he should have sought counsel immediately.... This excuse is governed by the ancient legal maxim: 'ignorantia legis neminem excusat.'"). The court will therefore grant summary judgment as to all of Bibum's state law claims.

## IV. *Conclusion*

For the foregoing reasons, the court shall DENY the motion for summary judgment as to Count VII of the amended complaint, and GRANT the motion for summary judgment as to all other counts of the amended complaint.

A separate Order will be entered.

who, clearly aware of the existence of a cause

## ORDER

In accordance with the accompanying Memorandum Opinion, IT IS this day of January, 2000, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion by Defendants Prince George's County and Julio Zelaya for summary judgment BE, and hereby IS, DENIED with respect to Count VII of the amended complaint, and GRANTED with respect to all other counts of the amended complaint;

2. Judgment BE, and hereby IS, ENTERED in favor of Defendant Prince George's County with respect to all claims;

3. Judgment BE, and hereby IS, ENTERED in favor of Defendant Julio Zelaya with respect to counts I, II, III, IV, V, VI, VIII and IX;

4. A telephone conference is scheduled for **January 27, 2000, at 9:00 a.m. to set a trial date. Counsel for Plaintiff is directed to arrange and initiate the call to counsel for Defendant and the court;** and

5. The Clerk is directed to mail a copy of this Order and the accompanying Memorandum Opinion to counsel for the parties.

of action, decided to sit on his rights.