873 A.2d 458

**Rita CHAPPELLE**

v.

**Osbourn McCARTER.**

No. 0411, Sept. Term, 2004.

Court of Special Appeals of Maryland.

May 3, 2005.

164

Sherrie T. Howell, Baltimore, for appellant.

William R. Phelan, Jr. (Ralph S. Tyler, City Solicitor, on brief), for appellee.

Panel HOLLANDER SHARER RODOWSKY, LAWRENCE F. (retired, specially assigned), JJ.

Opinion by RODOWSKY, J.

This case involves the notice provision of the Local Government Tort Claims Act (LGTCA), Maryland Code (1974, 2002 Repl.Vol.), §§ 5–301 through 5–304 of the Courts and Judicial Proceedings Article (CJ).

The appellant, Rita Chappelle (Chappelle), filed a complaint in this action on May 23, 2002, in the Circuit Court for Baltimore City, against the appellee, Osbourn McCarter (McCarter), and the Baltimore City Police Department (BCPD). Thereafter, Chappelle filed a number of amended complaints. The initial amended complaint dropped BCPD as a defendant and substituted Baltimore City, which was dropped from the second amended complaint. The second and third amended complaints proceeded only against McCarter. Final judgment was entered following a hearing at which the court granted McCarter's motion to dismiss, or for summary judgment, on the third amended complaint. Chappelle did not present any evidence in contradiction of the facts that were presented by McCarter in support of his motion for summary judgment.

In her third amended complaint, Chappelle alleged that she was an employee of the Police Athletic League, a non-profit corporation, and that McCarter was an employee of the BCPD, assigned to the Police Athletic League. She averred that the two attended a public event "on behalf of their respective employers" on January 28, 2000, at which McCarter battered the plaintiff and that, subsequently, he stalked her.[1]

---

1.  Specifically, Chappelle alleged the following:

These acts, Chappelle averred, were malicious and carried out with ill-will and evil intent toward the Plaintiff. She concluded her statement of background facts, which were incorporated into all counts of her third amended complaint, by averring: "7. The Plaintiff has substantially complied with the requirements of the LGTCA in that the office of the City Solicitor was on notice of Plaintiff's claim as early as March 24, 2000." From the factual allegations, Chappelle derived four counts: (1) violation of Articles 24 (Due Process) and 46 (Equal Rights Amendment) of the Maryland Declaration of Rights, (2) false imprisonment, (3) intentional infliction of emotional distress, and (4) invasion of privacy.

The separate document evidencing the final judgment in this case is an order dated March 17, 2004, that the court adapted, by strikeouts and interlineations, from a form of order submitted by McCarter with his motions attacking the second amended complaint. The order reads in relevant part: "That the defendant's Motion to Dismiss Plaintiff's case is hereby GRANTED for the reasons stated on the record this 17th day of March, 2004[.]"

Unfortunately, Chappelle, as appellant, did not obtain or cause to be filed in the original record, as required by Mary-

---

"4. While at the function, the Defendant Osbourn McCarter began to make fun of the Plaintiff and the way that she was dressed including her hair. He challenged a fellow police officer and a department civilian employee to dare him to snatch Plaintiff's hair piece from her head. He then proceeded to where the Plaintiff was standing and grabbed her from behind by the hair, twisting her at a 180 degree angle, and pulled her across the room despite Plaintiff's protestations that she was being hurt by his actions. Plaintiff demanded to be released and threatened to hit defendant in the groin if he did not release her. Defendant McCarter then stated 'the only thing going between my legs is your mouth.' He then shoved her head toward his groin. Plaintiff did not give her consent to be touched or her consent to be deprived of her liberty. Plaintiff was placed in imminent fear of bodily harm.

"5. Since the attack on Plaintiff, the Defendant Osbourn McCarter, has stalked the Plaintiff, harassed her, and peered in her windows, ringing her door bell, making frequent phone calls and other acts. All of these actions by Defendant McCarter have caused the Plaintiff severe emotional distress and invaded her privacy."

land Rule 8–411(a)(2), the transcript of the court's explication of its reasoning. Nevertheless, Chappelle submits that our standard of review is that applicable to an appeal from the grant of a motion for summary judgment. McCarter, represented by the Office of the City Solicitor for Baltimore City, does not disagree with that analysis of what transpired in the circuit court. Further, at oral argument in this Court the parties focused on whether Chappelle had given the notice required by the LGTCA. Consequently, we consider that summary judgment was granted in favor of McCarter on the notice issue.

Particularly directed to that issue were an affidavit and answers by Chappelle to interrogatories that McCarter filed in support of summary judgment in his favor. According to the affidavit by an investigator supervisor in the City of Baltimore's Law Department, Central Bureau of Investigations Division, the affiant conducted a search in November 2003 and "was unable to find any evidence that the plaintiff, Rita Chappelle, filed any notice of claim with the City Solicitor of Baltimore."

In her answer to interrogatory No. 29, Chappelle affirmed the following:

"Plaintiff reported the attack by Osbourn McCarter to his superior, Major Michael Bass in the Baltimore City Police Department and to her supervisor, Vanessa Milio at the Police Athletic League. In addition, Plaintiff reported the subsequent actions of McCarter with regard to the stalking and harassment by McCarter to his superiors in the Baltimore City Police Department and to her supervisor at the Police Athletic League."

In addition, McCarter submitted a portion of a transcript of a hearing before the Workers' Compensation Commission on a claim by Chappelle against the Police Athletic League as employer, and the Injured Workers' Insurance Fund as insurer. The exhibit contains a portion of the testimony of Chappelle's supervisor, who attended a meeting with Major Bass of the BCPD at which Chappelle discussed the events of January

28, 2000, and the testimony of McCarter. It is sufficient for present purposes to note that the testimony in McCarter's exhibit completely contradicts the unsworn allegations of the third amended complaint.

## Discussion

By Chapter 369 of the Acts of 1997 the LGTCA was amended to include the BCPD as a "local government" under that Act. CJ § 5–301(d)(21). Although the BCPD was and, following the 1997 amendment to the LGTCA, remained an agency and instrumentality of the State of Maryland, *see Baltimore Police Dep't v. Cherkes,* 140 Md.App. 282, 310–13, 780 A.2d 410, 426–28 (2001), the purpose of the 1997 amendment was to extend the benefits of the LGTCA to officers of the BCPD who, prior to the amendment, were solely responsible for paying judgments entered against them for torts in the course of their employment. *Id.* at 325–26, 780 A.2d at 435. *See also State v. Meade,* 101 Md.App. 512, 523–24, 647 A.2d 830, 835–36 (1994), *cert. denied,* 337 Md. 213, 652 A.2d 669 (1995).

This Court summarized in *Cherkes* the "salient changes in tort liability, immunity, and responsibility for local government entities [that] were brought about by the enactment of the LGTCA in 1987[.]" 140 Md.App. at 317, 780 A.2d at 430–31. They are:

"• In some situations, the liability of a local government for damages for its own tortious conduct or the tortious conduct of its employees is capped at $200,000 per individual claim and $500,000 for total claims arising from a single occurrence. (CJ § 5–303(a)).

"• Before an action for unliquidated damages may be brought against a local government or its employee, notice must be given in compliance with the act. (CJ § 5–304).

"• Local governments are responsible for paying the legal defense costs of their employees in actions alleging damages resulting from tortious acts or omissions by an

employee in the scope of his employment. (CJ § 5–302(a)).

"• A person may not execute on a judgment for compensatory damages entered against an employee of a local government resulting from tortious acts or omissions by an employee within the scope of employment and without malice. (CJ § 5–302(b)).

"• Local governments are responsible for paying such judgments. (CJ § 5–303(b)).

"• Local governments may not be liable for punitive damages, but may indemnify employees for punitive damages awards entered against them. (CJ § 5–303(c))."

In the instant matter, McCarter's argument that Chappelle failed to give the required notice is based upon CJ § 5–304, which provides, in relevant part, as follows:

"(a) *Notice required.*—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

"(b) *Manner of giving notice.*—(1) ... the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, to the county commissioner, county council, or corporate authorities of a defendant local government, or:

"(i) In Baltimore City, to the City Solicitor;

. . . .

"(c) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given."

■■ The purpose of the notice requirement is:

" 'To protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.*, while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.' "

*Moore v. Norouzi*, 371 Md. 154, 167–68, 807 A.2d 632, 640 (2002) (quoting *Williams v. Maynard*, 359 Md. 379, 389–90, 754 A.2d 379, 384 (2000) (internal quotations and citations omitted)). Substantial compliance, however, with the notice requirement may suffice. *Id.* at 171, 807 A.2d 632, 807 A.2d at 643.

In her brief to this Court, Chappelle does not rely on substantial compliance; rather, she argues that the trial court erred by ruling that her claims were allegations against McCarter in his official capacity. The individual capacity/official capacity distinction applies in claims brought under 42 U.S.C. § 1983, *see Okwa v. Harper*, 360 Md. 161, 192–99, 757 A.2d 118, 134–39 (2000), but Chappelle makes no § 1983 claim in the instant matter. In her brief, Chappelle also submits that McCarter is being sued in his individual capacity because the allegations against him "are based upon actions that are not within the scope of his official duties[.]" This argument confuses the notice requirement with the obligation of the local government to defend and indemnify.

■ As noted above, the notice requirement applies to an action for unliquidated damages brought "against a local government *or its employees* [.]" (Emphasis added). CJ § 5–302(a) requires that "[e]ach local government ... provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government." Similarly, CJ § 5–303(b)(1) provides, in relevant part, that "a local government shall be liable for any

judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Thus, the notice requirement that applies to any action for unliquidated damages against an employee is not limited to actions in which the employee was acting within the scope of employment, although the local government's obligation to indemnify is so limited.

Further, the notice requirement cannot be circumvented simply by alleging that the employee was acting outside the scope of employment when committing the tort for which unliquidated damages are claimed. To permit the notice requirement to be circumvented in that fashion would violate one of the purposes of the LGTCA by depriving the local government of the opportunity for a relatively contemporaneous investigation. Chappelle's argument would permit a claimant to wait two years and 364 days after the tort and, without prior notice, file a suit against the employee, who then would have a right to assert, *viz a viz* the local government, that the employee was entitled to a defense and indemnification because the tort occurred in the course of employment.

At oral argument, Chappelle asserted that she had substantially complied based on the allegation in her third amended complaint that the "office of the City Solicitor was on notice of Plaintiff's claim as early as March 24, 2000." Chappelle explained in her argument that the allegation was based upon the notice of her workers' compensation claim which, at one time, she erroneously had asserted against Baltimore City in the belief that the Police Athletic League was an agency of that municipality.

We do not consider this argument for a number of reasons. First, there is no indication that it was decided by the circuit court. The record before us is inadequate to consider it, in that evidence of the notice and of its date of filing is absent from the record on summary judgment. Further, absent the precise notice, we think it unlikely that a notice of a workers' compensation claim would be couched as a notice of a claim for

unliquidated damages, but the latter is the type of notice required by CJ § 5–304(a). Also absent from the record is Chappelle's version of the meeting with her superior from the Police Athletic League and with Major Bass of BCPD.

Finally, there is no indication that, in the trial court, Chappelle invoked CJ § 5–304(c) by a motion, supported by a showing of good cause, that the court should entertain the suit even though the required notice was not given. In that connection we note that the United States District Court for the District of Maryland has held that a complaint of police brutality to the Prince George's County Police Department did not substantially comply with the LGTCA requirement, under CJ § 5–304(b)(2), that, in Prince George's County, the notice be furnished to the County Solicitor or County Attorney. *See Bibum v. Prince George's County,* 85 F.Supp.2d 557 (2000).[2]

For all the foregoing reasons, we affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**

---

2. Although *Bibum* relied in part on *Loewinger v. Prince George's County,* 266 Md. 316, 292 A.2d 67 (1972), and although *Moore,* 371 Md. at 178, 807 A.2d at 646, overruled *Loewinger, Moore* favorably cited the analysis in *Bibum* to the effect that the filing of the complaint at the police station in *Bibum* did not demonstrate good cause for excusing the failure to file a notice under the LGTCA. *See Moore,* 371 Md. at 182, 807 A.2d at 649.