877 A.2d 1129

**Thomas C. WHITE**

v.

**PRINCE GEORGE'S COUNTY, Maryland et al.**

**No. 01293 Sept. Term 2004.**

Court of Special Appeals of Maryland.

July 6, 2005.

130 

Ellis J. Koch, Rockville, for Appellant.

Rajesh Kumar (David S. Whitacre, County Atty., on the brief), Upper Marlboro, for Appellee.

Panel: HOLLANDER, SALMON, and KRAUSER, JJ.

HOLLANDER, Judge.

Claiming that he was the victim of police brutality during his arrest on April 23, 2001, Thomas C. White, appellant, filed suit on March 18, 2004, in the Circuit Court for Prince George's County, against appellees Prince George's County (the "County") and four of its police officers: Mark Elie; Herbert Pettiford, Jr.; Barba; and Evans.[1] As amended in May 2004, appellant alleged a violation of his civil and constitutional rights; battery and the use of excessive force; and negligent entrustment of a police dog and "continuing police powers" to Officer Elie. Appellees moved to dismiss, claiming appellant failed to provide the requisite notice under the Local Government Tort Claims Act ("LGTCA"), Md. Code (1974, 2002 Repl. Vol.), §§ 5–301 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.").

---

1. The Complaint is not in the Record Extract, and the Amended Complaint does not identify the first names of Officers Barba and Evans.

After the court granted appellees' motions and then denied appellant's motion to alter or amend, White noted this appeal. He presents two questions, which we quote:

I. Did the Trial Court commit error by failing to find substantial compliance with the 180 day notice requirement of Courts and Judicial Proceedings (CJ) [§ ] 5–304?

II. Did the Trial Court commit error by failing to find good cause for not following the strict requirements of CJ [§ ] 5–304?

For the reasons that follow, we shall affirm.

## FACTUAL SUMMARY

Appellant was arrested by Prince George's County Police officers on April 23, 2001, and was charged with first degree burglary.[2] The arrest led appellant to file the underlying suit, alleging police brutality during the arrest.

In response to a motion to dismiss filed by the County alleging, *inter alia*, that the County was misnamed, appellant filed an Amended Complaint on May 10, 2004.[3] White alleged that, after he "peacefully" surrendered, he was handcuffed and ordered to "lay on the floor." Then, according to appellant, "without cause or provocation," Officer Elie "released his [police] dog and ordered the dog to bite." Appellant averred that the dog "violently bit" him, "tearing flesh from [appellant's] leg." When appellant attempted to stand, Officer Elie struck him in the head with a baton, "splitting open" appellant's head and inflicting a wound that required twenty-four stitches. Although Officers Pettiford, Barba, and Evans "were present during the entire incident," White claimed that

---

**2.** Appellant was subsequently convicted of first-degree burglary. On October 10, 2001, he was sentenced to fifteen years, with all but seven years suspended.

**3.** Because of the filing of the Amended Complaint, the court denied the motion on May 18, 2004.

they "took no action to prevent Officer Elie from causing injury" to appellant.

Because the Amended Complaint failed to allege compliance with the statutory notice requirement in C.J. § 5–304, appellees moved to dismiss the suit.[4] In response, appellant filed a "Motion to Entertain Suit," claiming substantial compliance with the notice requirement and good cause for failing to follow "the strict requirements of C.J. § 5–304(a)." [5]

With his Motion to Entertain Suit, appellant submitted an undated affidavit. He averred, in part:

2. After the incidents alleged in the Complaint, I filed a Complaint with the Prince George's County Police.

3. I was visited by Sgt. Allen W. Dis[c]hinger who stated that he was from Internal Affairs and that my complaint was being investigated.

4. I was told to take no action while the investigation was taking place.

5. I received subsequent visits by Sgt. Allen W. Dis[c]hinger when I was again assured that the matter was being investigated and I would be advised.

6. I took no action as instructed and awaited action to be taken by the police.

7. Any delay in this matter was induced by the representations of the police.

White also submitted a copy of the business card of Sergeant Dischinger.

Thereafter, the County filed an Opposition to the Motion to Entertain Suit. Appellees also submitted an undated affidavit of Sergeant Allen Dischinger, who averred, in part:

---

4. The County and the police officers filed separate motions that were virtually identical.

5. None of these pleadings are included in the record extract. Maryland Rule 8–501(c) (2004) provides that "[t]he record extract shall contain all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal...."

1. I am currently employed as a sergeant for the Prince George's County police department, assigned to the homicide unit. I have been a Prince George's County police officer for 23 years and a detective for most of that time.

2. I was the iad investigator for the case referenced in Plaintiff's Complained [sic] filed in the above-captioned case.

3. I spoke with the Plaintiff on two occasions—both at the Prince George's County Detention Center. The first visit was on 7/24/01, during which time I took a taped witness statement from him. I also visited the Plaintiff on 8/1/01 for purposes of photographing him.

4. At no time did I indicate to the Plaintiff that he was "to take no action" while the investigation was taking place.

The exhibits reflect that, in July of 2001, appellant filed with the Prince George's County Police Department (the "Department") a complaint of police brutality in connection with his arrest in April of 2001. In response, on July 18, 2001, Captain Ellis Jones, Commander of the Department's Internal Affairs Division ("I.A.D."), wrote a letter to appellant.[6] The letterhead on the stationery said, "The Prince George's County Government." Across the bottom of the letter, it stated: "HEADQUARTERS: 7600 Barlowe Road, Palmer Park, MD 20785," which is the primary address for the Department. The letter stated:

This is to advise you that your complaint was received by this Department on July 18, 2001. Since your complaint alleges brutality on the part of a member of this Department, it must meet certain conditions mandated by State law before any investigation can be conducted.

On July 1, 1977, the State legislature amended the "Law Enforcement Officers' Bill of Rights," Article 27, Section 727–734D of the Annotated Code of Maryland. Section 728B(4) states:

"A complaint against a law enforcement officer, alleging brutality in the execution of his duties, *may not be*

---

6. This exhibit was submitted with appellant's revisory motion.

*investigated unless the complaint be duly sworn to by the aggrieved person,* a member of the aggrieved person's immediate family, or by any person with first hand knowledge obtained as a result of the presence at and observation of the alleged incident, or by the parent or guardian in the case of a minor child, before an official authorized to administer oaths. An investigation which could lead to disciplinary action under this subtitle for brutality may not be initiated and an action may not be taken unless the complaint is filed within 90 days of the alleged brutality."

Therefore, the Police Department is prohibited, by law from conducting any investigation in regard to the brutality portion of your complaint *due to the fact it has not been duly sworn to and notarized.* Sgt. Allen W. Dischinger # 972, will be contacting you to arrange a meeting to have your complaint notarized.

In the event you have any questions concerning the matter, please do not hesitate to contact any member of the Internal Affairs Division at (301) 896–2660.

Thereafter, on July 24, 2001, Sergeant Allen W. Dischinger, an I.A.D. investigator, met with appellant and took a recorded statement from him. He then photographed appellant on August 1, 2001.[7] No evidence was presented showing that appellant had any further contact with the Department or I.A.D. personnel.

In the meantime, on July 31, 2001, appellant completed and signed a notarized form with respect to the incident of April 23, 2001,[8] titled "Prince George's County Police Department Complaint Against Police Practices." In the space provided to describe the incident, appellant wrote, "I've Already Provided A Statement!" The top of the form included two pre-printed addresses for the Department. One was for the Headquarters

---

[7.] Appellant's statement to I.A.D. was not submitted in the proceedings below.

[8.] This document was submitted in support of appellant's revisory motion.

located in Palmer Park, and the other was for the Internal Affairs unit in Clinton. In the section asking for the names of the officers "involved" in the alleged brutality incident, appellant wrote "CPL Elie," "PFC Barba," "P.O. Pettiford," and "P.O. Evans."

In a "Memorandum Opinion of the Court" dated July 7, 2004, the court granted the Motion to Dismiss, without a hearing. The court said, in part:

> Before the Court is the question of whether or not the Plaintiff in the above-referenced case provided the required notice or had good cause not to, before bringing an action for unliquidated damages against Defendants as outlined under the Local Government Tort Claims Act. . . .
>
> * * *
>
> As outlined by the Court of Appeals, *"the purpose of the notice requirements under the LGTCA is to ensure that the local government is made aware of its possible liability at a time when it is able to conduct its own investigation and ascertain, for itself, from evidence and recollection that are fresh and undiminished by time, the character and extent of the injury and its responsibility for it."* Moore v. Norouzi, 371 Md. 154, 807 A.2d 632 (2002).
>
> *"Relevant to determining the amount of diligence with which an 'ordinarily prudent person' under the circumstances of [his/her case] would prosecute his or her claim is the underlying purpose of the notice statute."* Moore v. Norouzi, 371 Md. 154, 807 A.2d 632 (2002).
>
> In the case *sub judice,* the Plaintiff asserts by affidavit that he filed a complaint with the Prince George's Police department and that [Sergeant Dischinger] advised him to take no action while the matter was being investigated. He also states that the same officer visited him and assured him that the matter was being investigated. Plaintiff offers the above as proof that he substantially complied with the notice requirements of the LGTCA and that he had good cause not to follow the strict statutory requirements thus the court may still entertain his suit.

The LGTCA statute explicitly states that actions for unliqui-
dated damages may not be pursued unless notice is given
within 180 days after the injury. In this instance, notice
was not given until approximately two years later.[9] While
the Plaintiff's affidavit offers his reasoning for his untimely
filing, relying on the internal affairs officer's advice, the
Plaintiff offers no other evidence of any communications
with the internal affairs officer.[4] Additionally, he offers no
evidence of an ongoing police investigation that would war-
rant excusing his lack of diligence. This court finds that an
'*ordinarily prudent person*' would have, and should have,
done more to ensure his action was proceeding in a timely
manner.

### Opinion and Order of the Court

Under the circumstances of this case the Plaintiff has failed
to meet his burden of demonstrating good cause and sub-
stantial compliance. Viewing this case in [ ]the light most
favorable to the Plaintiff the court finds that he has offered
no direct evidence of specific dates, times, or communica-
tions to support his allegations so that the court could
justifiably infer that any of the Defendants were put on
notice within the statutorily prescribed time limits. As
such, the court need not address the issue of whether or not
the Defendants have been prejudiced by lack of the re-
quired notice.

---

4. [Appellant] attached a copy of Sergeant Dischinger's business
card to his affidavit, stating that Sergeant Dischinger gave it to him
during a visit. While this may be the case, this by itself is not
demonstrative evidence rising to the level of demonstrating good cause
for failure to follow the statute.

On the same date, July 7, 2004, the court issued an "Order
of Court," granting appellees' motions to dismiss the case.
That ruling prompted appellant to file, on July 14, 2004, a
"Motion to Alter and Amend Judgment (Rule 2–534) or in the

---

9. From the information provided to us, we cannot determine when
notice was actually provided to the County.

Alternative to Revise (Rule 2–535)." With that motion, appellant submitted the letter of July 18, 2001, from the Department and his notarized complaint of July 31, 2001, along with an affidavit referring to the exhibits. Then, on August 3, 2004, White noted this appeal.

Thereafter, on August 5, 2004, appellees filed an opposition to the revisory motion. The court denied "Plaintiff's Motion for Reconsideration" by "Order of Court" dated August 9, 2004.

## DISCUSSION

### I.

Preliminarily, we shall address appellees' contentions that 1) appellant noted an appeal solely from the circuit court's ruling of July 7, 2004, and that 2) because appellant did not appeal from the denial of his revisory motion, it is not appropriate for us to consider the exhibits that appellant attached to his motion to alter or amend. Appellees assert:

> Had Appellant noted an appeal from the Court's denial of his "Motion to Alter or Amend judgment (Rule 2–534) or in the Alternative to Revise (Rule 2–535)" these exhibits might properly be considered in an appeal from *that* judgment. They should not, however, be considered in a review of the Court's original judgment dismissing the case.

(Emphasis in original).

 When, as here, a motion to alter or amend is filed within ten days after entry of judgment, the filing of the motion stays the time for filing an appeal until thirty days after the court rules on the revisory motion. *Southern Mgmt. Corp. v. Taha,* 378 Md. 461, 494 n. 13, 836 A.2d 627 (2003); *Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 486, 494 A.2d 940 (1985); *Pickett v. Noba, Inc.,* 114 Md.App. 552, 557, 691 A.2d 268 (1997), *on reconsideration,* 122 Md.App. 566, 714 A.2d 212 (1998), *cert. denied,* 351 Md. 663, 719 A.2d 1262 (1998); *Stephenson v. Goins,* 99 Md.App. 220, 225–26, 636 A.2d 481, *cert. denied,* 335 Md. 229, 643 A.2d 384

(1994). As we explained in *Sieck v. Sieck,* 66 Md.App. 37, 44–45, 502 A.2d 528 (1986), a motion to revise a court's judgment, "however labeled, filed within ten days after the entry of judgment will be treated as a Rule 2–534 motion. . . ."

■ Of import here, if a notice of appeal is filed before the court has ruled on a post-judgment motion, the appeal "will not lose its efficacy . . . but its effect will be delayed until the trial court rules on the pending motion. . . ." *Edsall v. Anne Arundel County,* 332 Md. 502, 506, 632 A.2d 763 (1993). Because appellant filed his revisory motion within ten days of the Order granting the motion to dismiss, appellant is entitled to a review of both the motion to dismiss and the motion to alter or amend. This includes the exhibits that appellant appended to his revisory motion.

## II.

In order to pursue a claim for unliquidated damages under the LGTCA, the claimant must comply with the 180–day notice requirement set forth in C.J. § 5–304. It states, in part:

### § 5–304. Actions for unliquidated damages.

(a) *Notice required.*—Except as provided in subsection (c) of this section, an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury.

(b) *Manner of giving notice.*—

\* \* \*

(2) In . . . Prince George's County, the notice shall be given in person or by certified mail, return receipt requested, bearing a postmark from the United States Postal Service, by the claimant or the representative of the claimant, *to the county solicitor or county attorney.*

(3) The notice shall be in writing and shall state the time, place, and cause of the injury.

(c) *Waiver of notice requirement.*—Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

(Emphasis added).

Appellant concedes that he did not strictly comply with the notice provision of the LGTCA. Nevertheless, he contends that the court erred when it failed to find that he substantially complied with C.J. § 5–304. In his view, the County was put on notice when he timely filed his brutality complaint with the Department.

With respect to the matter of substantial compliance, appellant observes that 1) he timely sent a letter to the Department in July 2001, which was received on July 18, 2001; 2) the Department commenced an investigation and, to that end, Sergeant Dischinger met with appellant on two occasions, all within the statutory notice period; 3) based on the letterhead that appears on the Department's letter of July 18, 2001, it "would lead a reasonable person to believe that Prince George's County is on notice." He adds: "How can the County and the officers . . . complain that they were not on notice to allow a timely investigation when they acknowledged the complaint and commenced the investigation?"

Appellees respond that the court below did not err in dismissing the suit based on appellant's failure to comply with C.J. § 5–304, because appellant did not provide the requisite notice within 180 days. In their view, the complaint filed with the Department did not constitute substantial compliance because "there is no allegation that it was a notice of claim for unliquidated damages, as required by C.J. § 5–304," nor was there any "allegation or evidence that the police department was authorized to investigate or settle tort claims on behalf of Prince George's County."

As the Court of Appeals explained in *Housing Auth. v. Bennett*, 359 Md. 356, 358, 754 A.2d 367 (2000), "[u]ntil the

twentieth century, local governments generally had no immunity under Maryland common law in either tort or contract actions." *See Rios v. Montgomery County,* 157 Md.App. 462, 475, 852 A.2d 1005 (2004), *affirmed,* 386 Md. 104, 124, 872 A.2d 1 (2005). In the early twentieth century, however, the Court of Appeals recognized that local governments had "immunity in certain types of tort actions based on activity categorized as 'governmental' but had no immunity in tort actions based on activity categorized as 'private' or 'corporate' or 'proprietary.'" *Bennett,* 359 Md. at 359, 754 A.2d 367. Thus, "shaped largely by judicial decisions and by statutes dealing with specific agencies or specific matters," *id.* at 358, 754 A.2d 367, local governments enjoyed limited immunity from tort liability for "nonconstitutional torts based on activity categorized as 'governmental.'" *Id.* at 361, 754 A.2d 367. *See DiPino v. Davis,* 354 Md. 18, 47, 729 A.2d 354 (1999) ("A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity"); *Baltimore Police Department v. Cherkes,* 140 Md.App. 282, 314, 780 A.2d 410 (2001) (stating that "local governmental bodies have common law governmental immunity only for acts that are governmental, and not for private or proprietary acts, and they do not have immunity from liability for State constitutional torts"); *see also Harford County v. Town of Bel Air,* 348 Md. 363, 373, 704 A.2d 421 (1998); *Ashton v. Brown,* 339 Md. 70, 101, 660 A.2d 447 (1995).

With the enactment of the LGTCA, codified at C.J. §§ 5–301, *et. seq.,* the Legislature sought to " 'provide a remedy for those injured by local government officers and employees acting without malice and in the scope of their employment.' " *Faulk v. Ewing,* 371 Md. 284, 298, 808 A.2d 1262 (2002) (citation omitted). At the same time, it sought to ensure "that the financial burden of compensation is carried by the local government ultimately responsible for the responsible public

officials' acts." *Ashton v. Brown,* 339 Md. at 108, 660 A.2d 447.

C.J. § 5–304, set forth above, contains the notice requirement that applies to such tort actions. The Court of Appeals recently ruled that the 180–day notice requirement of § 5–304 is constitutional under both federal and state law. *Rios v. Montgomery County,* 386 Md. 104, 120, 135, 136, 872 A.2d 1 (2005).

As the Court explained in *Neuenschwander v. Washington Suburban Sanitary Commission,* 187 Md. 67, 76, 48 A.2d 593 (1946), *overruled on other grounds as stated in Arnold v. Prince George's County,* 270 Md. 285, 311 A.2d 223 (1973), the notice requirement derives from the Legislature's authority to grant or deny an individual the right to pursue a legal action against a municipal corporation. The Court said:

> When the Legislature creates a municipal corporation as part of the machinery of government of the State, it is within its province to adjust the relative rights of the corporation and the citizens. The Legislature has thus the power to enact a statute requiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified period after injury or damage is sustained.

*Neuenschwander,* 187 Md. at 76, 48 A.2d 593 (internal citations omitted).

The notice requirement under C.J. § 5–304 serves an important purpose. It is designed

> "to protect the . . . counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the . . . county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, 'sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.' "

*Moore v. Norouzi,* 371 Md. 154, 167–68, 807 A.2d 632 (2002) (citations omitted); *see Rios,* 386 Md. at 126, 872 A.2d 1; *Faulk,* 371 Md. at 298–99, 808 A.2d 1262; *Williams v. Maynard,* 359 Md. 379, 389–90, 754 A.2d 379 (2000). Among other things, the notice provision enables a governmental defendant to budget properly, to set aside appropriate reserves, and to account for payment of claims under complex accounting rules and tax statutes. *Rios,* 157 Md.App. at 477, 852 A.2d 1005.

█ As the Court of Appeals recently reiterated, the notice requirement under the LGTCA is "a condition precedent to maintaining an action...." *Rios,* 386 Md. at 127, 872 A.2d 1; *see Faulk,* 371 Md. at 304, 808 A.2d 1262. Indeed, a suit under the LGTCA is "fatally flawed if the condition is not satisfied." *Rios,* 386 Md. at 127, 872 A.2d 1. *See Waddell v. Kirkpatrick,* 331 Md. 52, 59, 626 A.2d 353 (1993) (defining a "condition precedent" as " 'a condition attached to the right to sue at all' ") (citation omitted).

█ The notice requirement operates independent of the limitations period that applies generally to the filing of suit. Serving timely notice is essential to preserve a claimant's right to file suit at any time during the limitations period. In contrast to the tolling of limitations, nothing in the LGTCA expressly provides for tolling the notice period. *See American Gen. Assur. Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212 (2003); *Piselli v. 75th Street Medical,* 371 Md. 188, 215, 808 A.2d 508 (2002); *Frederick Road Ltd. Ptshp. v. Brown & Sturm,* 360 Md. 76, 95–6, 756 A.2d 963 (2000); *Doe v. Maskell,* 342 Md. 684, 696, 679 A.2d 1087 (1996), *cert. denied,* 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997).

█ There are circumstances, however, when a litigant is excused from strict compliance with the notice obligation, so long as "the purpose of the notice statute was fulfilled by substantial compliance with the statutory requirements." *Williams,* 359 Md. at 390, 754 A.2d 379; *see Jackson v. Board of County Comm'rs,* 233 Md. 164, 167–168, 195 A.2d 693 (1963). In *Faulk,* 371 Md. at 299, 808 A.2d 1262, the Court explained:

Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute. *Moore,* 371 Md. at 171–72, 807 A.2d 632; *Maynard,* 359 Md. at 389–90, 754 A.2d 379; *Jackson,* 233 Md. at 167, 195 A.2d 693. Substantial compliance "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Moore,* 371 Md. at 171, 807 A.2d 632. *See also Williams v. Montgomery County,* 123 Md.App. 119, 131, 716 A.2d 1100 (1998), *aff'd sub nom. Williams v. Maynard,* 359 Md. 379, 754 A.2d 379 (2000) (noting that notice must be given even if it is deficient in some respects). In *Condon v. Univ. of Maryland,* 332 Md. 481, 496, 632 A.2d 753 (1993), we said that substantial compliance is "such communication that provides ... 'requisite and timely notice of facts and circumstances giving rise to the claim.'" *Id.* (quoting *Conaway v. State,* 90 Md.App. 234, 246, 600 A.2d 1133 (1992)).

Relying on *Moore,* appellant maintains that the filing of his complaint with the Department constituted substantial compliance, because it satisfied the purpose of the notice provision. His reliance on *Moore* is misplaced.

*Moore* was a consolidated appeal, arising from separate vehicular accidents involving Montgomery County employees and two claimants, Moore and Mendelson. *Moore,* 371 Md. at 158–59, 807 A.2d 632. Within days of the accident, the claimants discussed the accidents with representatives of Trigon Administrators, Inc. ("Trigon"), Montgomery County's third party claims administrator. *Id.* at 162–64, 807 A.2d 632. Trigon's representative identified himself as the claims administrator for the county and advised that "formal notification" had been received. *Id.* at 165, 807 A.2d 632. However, notice was not provided directly to the County, in the manner directed by the statute. *Id.* at 159, 807 A.2d 632; *see* LGTCA, § 5–304(b)(1)(iii). Because the claimants failed to notify the County Executive, as required by the statute, Montgomery County argued that they failed to satisfy the statutory notice

requirement under the LGTCA. *Moore,* 371 at 170, 807 A.2d 632.

The Court recognized that "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice," *id.* at 171, 807 A.2d 632, "even though not all of the details prescribed have been complied with." *Id.* However, of import here, the Court underscored that "[t]here must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Id.* Moreover, the defective notice must satisfy "the purpose" of the notice provision. *Id.*

The Court then considered whether "notice to a third-party claims administrator, acting on behalf of a local government," constituted substantial compliance with the notice require-ments of the LGTCA § 5–304. *Id.* at 158, 807 A.2d 632. The Court defined "substantial compliance" as " 'such communica-tion that provides the State "requisite and timely notice of facts and circumstances giving rise to the claim." ' " *Id.* at 172, 807 A.2d 632 (citations omitted). In its view, " '[s]ubstan-tial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation.' " *Id.* at 178, 807 A.2d 632 (citation omitted; alteration in *Moore*).

In the Court's view, the parties substantially complied with the notice statute, given the nature of the County's system of claims administration and the control that the County exer-cised over Trigon's activities. *Id.* at 177, 807 A.2d 632. The *Moore* Court stated:

[W]here the tort claimant provides the local government, *through the unit or division with the responsibility for investigating tort claims* against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304(b)(3) to be supplied, *who thus acquires actual knowledge within the statutory period,* the tort claimant has substantially complied with the notice provisions of the LGTCA. This test is fair and has the advantage of taking

account of the reality of how tort claims actually are handled.

*Id.* at 178, 807 A.2d 632 (emphasis added). *See also Faulk*, 371 Md. at 307–08, 808 A.2d 1262 (concluding that plaintiff's timely notice to town's insurer, rather then the town, constituted substantial compliance with statutory notice requirement, because notice was provided in sufficient time to enable the town to conduct a "timely investigation"; the " 'evidence and recollection [were] fresh and undiminished by time' "; and the insurer was notified "that Plaintiff expected some type of compensation from its insured, the Town of Easton, for his personal injuries and property damage") (citation omitted).

██ Based on the foregoing, we are satisfied that appellant did not substantially comply with the statutory notice requirement by filing a complaint with I.A.D. about police brutality. Unlike in *Moore*, appellant did not provide notice to an entity with responsibility for investigating tort claims lodged against the County. Instead, appellant sent notice to the Department's Internal Affairs Division. The content of that complaint pertained to White's allegation of police brutality, not to tort claims arising from such conduct.

Moreover, the investigation that ensued was conducted by and for I.A.D., under a wholly separate procedure. Indeed, as the Department's letter of July 18, 2001 reflects, the Department indicated that appellant's brutality claim was governed by the statute pertaining to the Law Enforcement Officers' Bill of Rights ("LEOBR") under Md. Code (1999 Repl. Vol.) Art. 27, §§ 727–734 D.[10] Notice to I.A.D. simply was not notice to the County Attorney or County Solicitor, as required by C.J. § 5–304(b)(2).

To be sure, in *Moore*, the Court indicated that substantial compliance may be found when notice is provided to the entity responsible for investigating the tort claim, rather than to the party named in the statute. That is not what happened here,

---

10. Effective October 1, 2001, LEOBR was recodified at Md.Code (2003), §§ 3–101 to 3–113 of the Public Safety Article.

however. Indeed, there was no indication of a relationship between I.A.D. and the County Attorney or County Solicitor, akin to the working relationship between Montgomery County and Trigon. To the contrary, there was no evidence that the Department actually communicated with the County Attorney or County Solicitor, so as to apprise the County of its potential liability and enable it to conduct a thorough investigation while memories were still fresh. Moreover, unlike in *Moore,* the Department was not charged with the duty to investigate tort claims against the County, nor did the Department construe appellant's complaint of police brutality as a tort claim against the County. *See Faulk,* 371 Md. at 307, 808 A.2d 1262 (observing that it was "important to us in *Moore,* in accepting the claimants' substantial compliance arguments, that the intertwined information technology systems of the two existed, that Trigon had authority to settle unilaterally claims up to $2500 per claim, and that Trigon conducted extensive fact-finding and other negotiations with the claimants, on behalf of the County").

The recent case of *Chappelle v. McCarter,* 162 Md.App. 163, 873 A.2d 458 (2005), supports our conclusion that there was no substantial compliance here. Chappelle, an employee of the Police Athletic League ("PAL"), brought suit in 2002 against an employee of the Baltimore City Police Department, alleging battery and stalking, violation of constitutional rights, and other claims, as a result of events that occurred in January 2000. *Chappelle,* 162 Md.App. at 165, 873 A.2d 458. The circuit court granted the defendant's motion to dismiss or for summary judgment based on plaintiff's failure to give the notice required by the LGTCA. *Id.,* at 166–67, 873 A.2d 458.

On appeal, Chappelle averred that she had substantially complied with the notice requirement, because the City Solicitor received notice of her claim in March 2000, when she filed a workers' compensation claim which "she erroneously had asserted against Baltimore City in the belief that the Police Athletic League was an agency of that municipality." *Id.,* at 171, 873 A.2d 458. Writing for this Court, Judge Rodowsky said: "[A]bsent the precise notice, we think it unlikely that a

notice of a workers' compensation claim would be couched as a notice of a claim for unliquidated damages, but the latter is the type of notice required by CJ § 5–304(a)." *Id.* at 171–72, 873 A.2d 458

## III.

Alternatively, appellant argues that he showed good cause for any delay in notice, because he "was instructed by the police to take no action while the investigation was ongoing." He asserts: "A reasonably prudent man, having been instructed on what to do by the police would do just as instructed." Appellant states:

There was a specific affirmative representation by the police to Mr. White while under incarceration to take no action. Mr. White obeyed the police instruction. His action in accord with that instruction constitutes good cause for delay. . . .

The standard is what would the ordinarily prudent man *in the same or similar circumstances do.* That fictional person in this case is an incarcerated person under the complete control of the prison system. A person who, for purposes of this motion, was brutalized and beaten by the police. What does this prudent person do under those circumstances other than obey the police instructions to give them time to investigate? It is only after an unreasonable passage of time that he can be held to recognize that something is amiss and he better bring suit.

Appellees counter that the court did not abuse its discretion in declining to find good cause. They assert: "Failure to obtain counsel (and, thus, failure to be aware of the notice requirement) does not constitute the requisite 'good cause' necessary to excuse a plaintiff from complying with the statute."

In appellees' view, White's affidavit "was remarkable for its vagueness and lack of detail." They claim that, even if Sergeant Dischinger told White that he should " 'take no action' " during the investigation, White's affidavit "never says

what action it is that Plaintiff would have taken had Disching-
er not told him to 'take no action'; nor does it tell us what
action Sgt. Dischinger was referring to, or even what Plaintiff
*thought* he was referring to at the time the statement was
made." Appellees continue:

Is it reasonable to infer, from the face of the affidavit, that
Plaintiff *would* have filed a notice of action for unliquidated
damages with the County Attorney within the statutory
time period (or even seen an attorney within that time
frame), had he not been instructed to "take no action"? The
fact that Plaintiff fails to plainly state as much in the
affidavit suggests that this is not a reasonable inference, but
merely the argument of counsel on behalf of a client that
simply cannot make such a statement.

When, as here, a litigant has not substantially
complied with the notice provision, C.J. § 5–304 permits a
waiver of the notice requirement, so long as there is "good
cause" for the dereliction. *Moore,* 371 Md. at 179, 807 A.2d
632; *Heron v. Strader,* 361 Md. 258, 270, 761 A.2d 56 (2000).
Under C.J. § 5–304(c), if the plaintiff has met the burden of
establishing good cause to excuse the failure to comply with
the notice requirement, the defendant must "affirmatively
show that its defense has been prejudiced" by untimely notice.

Maryland courts evaluate good cause based upon
" 'whether the claimant prosecuted his claim with that degree
of diligence that an ordinarily prudent person would have
exercised under the same or similar circumstances.' " *Heron,*
361 Md. at 271, 761 A.2d 56 (quoting *Westfarm Associates v.
Washington Suburban Sanitary Commission,* 66 F.3d 669,
676–677 (4th Cir.1995)); *see Rios,* 386 Md. at 141, 872 A.2d 1
(same); *Moore,* 371 Md. at 179, 807 A.2d 632 (concluding that,
by relying on the representations of Trigon, claimants acted as
would an "ordinarily prudent person" under similar circum-
stances); *Hargrove v. Mayor and City Council of Baltimore,*
146 Md.App. 457, 463, 807 A.2d 149 (2002) (recognizing that
"good cause is a test 'of ordinary prudence, that is, whether
the claimant prosecuted his claim with that degree of diligence

that an ordinarily prudent person would have exercised under the same or similar circumstances' ") (citation omitted); *Bibum v. Prince George's County,* 85 F.Supp.2d 557, 565 (D.Md. 2000)(" '[T]he test for [the] existence [of good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.' Ignorance of the statutory requirement does not constitute good cause.") (citations omitted; alterations in *Bibum).*

In *Rios,* 386 Md. at 121, 872 A.2d 1, the Court made clear that "[t]he question of whether good cause for a waiver of a condition precedent exists is clearly within the discretion of the trial court." *See also Heron,* 361 Md. at 270, 761 A.2d 56. An appellate court will not disturb the trial court's determination absent an abuse of that discretion. *Rios,* 386 Md. at 144, 872 A.2d 1; *Moore,* 371 Md. at 168, 807 A.2d 632; *Heron,* 361 Md. at 271, 761 A.2d 56.

What we said in *Hargrove* is pertinent:
"The discretion with which all courts determine whether good cause has or has not been shown is broad. It involves the exercise of one of the most important judicial functions. A ruling made in the exercise of that discretion is entitled to the utmost respect. It should not be overturned by an appellate court unless there is a clear showing that the discretion has been abused—that the result falls outside its broad limits."
146 Md.App. at 463, 807 A.2d 149 (quoting *Madore v. Baltimore County,* 34 Md.App. 340, 346, 367 A.2d 54 (1976)).

*Heron,* 361 Md. 258, 761 A.2d 56, is noteworthy. There, the plaintiff sued Prince George's County under the LGTCA, claiming malicious prosecution, false arrest, and false imprisonment. *Id.* at 260–61, 761 A.2d 56. The case arose from the plaintiff's arrest on various charges on August 24, 1997. After he was acquitted of all the charges on March 3, 1998, *id.* at 261, 761 A.2d 56, the plaintiff filed a notice of claim under the Act on April 30, 1998. *Id.* The Court of Appeals held that the

notice of claim was untimely as to the false arrest and false imprisonment claims, and that the plaintiff lacked good cause for the late filing. *Id.* But, it found that the notice was timely as to the malicious prosecution claim, *id.*, because that cause of action did not accrue until the acquittal. *Id.* at 265, 761 A.2d 56.

With regard to the belated notice, the Court held that the trial judge did not abuse his discretion in finding that "the pendency of a criminal case was not sufficient to constitute good cause for late filing." *Id.* at 271, 761 A.2d 56. The Court agreed with the trial judge that "an ordinarily prudent person, in Petitioner's circumstances, would have been able, through the exercise of reasonable diligence, to file such a Notice of Claim." *Id.*

In its discussion of good cause, the Court considered the factors that have generally been found to constitute good cause for a belated notice. It said:

> While courts generally consider a combination of factors, circumstances that have been found to constitute good cause fit into several broad categories: [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard), [2] serious physical or mental injury and/or location out-of-state, [3] the inability to retain counsel in cases involving complex litigation, and [4] ignorance of the statutory notice requirement.

*Id.* at 272, 761 A.2d 56 (footnotes and internal citations omitted). In *Rios*, the Court added that good cause has also been found to exist where representations made by local government representatives are "misleading." *Rios*, 386 Md. at 141–42, 872 A.2d 1.

The Court of Appeals decided *Rios*, 386 Md. 104, 872 A.2d 1, after the parties in this case submitted their appellate briefs. *Rios* is instructive as to the issue of good cause. If the trial court in *Rios* did not abuse its discretion in failing to find good cause, we are satisfied that the court below did not abuse its discretion.

Ms. Rios, a Bolivian immigrant with limited ability to speak or read English, received prenatal care through the Montgomery County Health Department. Her baby was born at Holy Cross Hospital, which is not operated by Montgomery County. Unknown to Ms. Rios, her obstetrician was a County employee. *Id.* at 112, 872 A.2d 1. At birth, it was apparent that the child sustained an injury to his shoulder. *Id.* at 113, 872 A.2d 1. Ten years later, Ms. Rios gave notice to the county of a medical malpractice claim. *Id.* The Court of Appeals upheld the trial court's determination that the delay was not excused by good cause because the claimant did not exercise due diligence. *Id.* at 117, 872 A.2d 1.

Writing for the Court, Judge Battaglia declined to find that a person's minority status constitutes good cause *per se.* *Id.* at 142, 872 A.2d 1. Moreover, the Court said, *id.* at 144–45, 872 A.2d 1:

The fact that the trial court, in its discretion, was not persuaded that Ms. Rios's limited English proficiency or immigrant status constituted good cause does not rise to the level of an abuse of discretion as it was not a determination that was exceptional, extraordinary, or egregious especially under the circumstances where Spanish-speaking nurses and translated forms were available. Therefore, we are not persuaded that Petitioner's immigrant status or limited English proficiency constitute good cause *per se* and find that the trial court did not abuse its discretion in considering it with the totality of the facts in this case.

\* \* \*

The Circuit Court considered Luis's minority, the ten-year delay in filing the claim, Ms. Rios's limited knowledge of English, available means to investigate, the lack of any form of investigation during the ten years after Luis's injury, and the fact that the County did not impede or hamper any possibility of investigation or conceal material facts. From all of those factors, the court concluded that good cause did not exist. We do not find that such a determination is beyond the view that a reasonable person would take of the facts of the case *sub judice.* As such, we conclude that the

trial court did not abuse its discretion in determining that good cause did not exist for waiving the notice requirement under the LGTCA.

*Bibum*, 85 F.Supp.2d at 565, is also instructive as to the issues of substantial compliance and good cause, because the case is factually similar to the one at bar. Bibum alleged that a Prince George's County Police Officer used excessive force in arresting him in 1997. *Id.* at 560. About a month after his arrest, he completed a form titled "Prince George's Police Department Complaint Against Police Practices," and sent it to the police department by regular mail. *Id.* at 564–65. One year later, Bibum filed suit against Prince George's County and the police officer, alleging assault, battery, malicious prosecution, false arrest, and state and federal constitutional claims. *Id.* at 560–61. He claimed that he substantially complied with the notice requirement when he completed the "form and mail[ed] it, by regular mail, to either the police headquarters or the police internal affairs department within a month after his arrest." *Id.* at 565. He also argued that he had good cause for the delay because he was misled by the police department. The federal court disagreed. *Id.*

The federal court held that a complaint of police brutality filed with the Department did not substantially comply with the notice requirement under C.J. § 5–304(b)(2), requiring, in Prince George's County, that the notice be furnished to the County Solicitor or County Attorney. *Id.* Moreover, it rejected the claim of good cause to excuse the failure to file the requisite notice, even though Bibum asserted that the police never told him that filing a complaint with the Department was insufficient to protect his rights. It said, *id.* at 565:

When Bibum went to the Prince George's County police station to complain about Officer Zelaya he was given a complaint form, which he completed and filed, but was not advised by the police that separate action would be required to preserve his right to sue the county or its employees. This, Bibum claims, was "misleading and deceptive," and would lead a reasonable person to believe that any notice requirement would be satisfied by returning the completed

form. Bibum asserts that because he was misled and deceived, he had good cause for not complying with the statutory notice requirement The court, however, does not agree that Bibum was deceived. There is no allegation of an affirmative misrepresentation by police department employees, nor does the court believe there is an affirmative duty on the part of the police department to provide unsolicited advice (or solicited advice for that matter) to complainants regarding the steps they must take to preserve a claim against the county or one of its employees.

Further, the *Bibum* court reasoned:

That Bibum simply did not know about the formal notice requirement of the LGTCA does not constitute good cause for his failure to comply. An ordinarily prudent person in a similar situation would have made his own investigation into the existence of any formal notice requirements or consulted an attorney on the matter. Thus, the court finds that good cause does not exist for waiving the LGTCA's notice requirement.

*Id.* at 565–66 (footnote omitted). *See also Downey v. Collins,* 866 F.Supp. 887, 888, 890 (D.Md.1994) (concluding that claimant did not show "good cause" for belated notice, even though he had no memory of underlying event that led to injury, and it took three months to locate a witness to a police officer's beating; plaintiff still had three months in which to file timely notice, and the plaintiff's decision to wait until the county supplied him with evidence did not excuse the delay).

 Claiming that he established good cause, White attempts to distinguish *Bibum.* He points out that, unlike in *Bibum,* Sergeant Dischinger affirmatively told him "to take no action while the investigation was ongoing"; he was an "incarcerated person under the complete control of the prison system"; and he was to be advised about the investigation. Thus, appellant contends that he was induced by Dischinger not to take action until the investigation was completed, and

he relied on that representation.[11] He asserts:

> In *Bibum*, a police complaint was filed and the fact that the police did not inform Mr. Bibum of the fact that other notice had to be given was not found to constitute "good cause." In the case at bar, precisely the opposite has occurred. There was a specific affirmative representation by the police to [appellant] while under incarceration to take no action. [Appellant] obeyed the police instruction. His action in accord with that instruction constitutes good cause for delay.

Appellant relies primarily on four exhibits: his affidavit; the letter from the Department dated July 18, 2001; the "Prince George's County Police Department Complaint Against Police Practices," notarized on July 31, 2001; and Dischinger's business card.

It is undisputed that Sergeant Dischinger twice had contact with appellant shortly after White filed his brutality complaint. Dischinger took a typed statement from appellant on his first visit in late July of 2001, and returned to photograph appellant on August 1, 2001. He also gave appellant his business card. Given the posture of the case, we also assume the truth of appellant's claim that Dischinger told him not to take any action during the pendency of the investigation. Yet, appellant never claimed that he had any communications with I.A.D. after August 1, 2001, nor does he claim that he ever inquired about the status of the police investigation.

Appellees contend that appellant failed to meet the burden of showing good cause to waive the statutory notice requirement. They state: "Ordinary citizens are required to seek out and obtain legal representation, within the statutory period, in order to ascertain their legal rights and obligations. Failure to obtain counsel (and thus, failure to be aware of the notice requirement) does not constitute the requisite 'good cause' necessary to excuse [the appellant] from complying with the statute."

---

11. We have no knowledge as to the results of the I.A.D. investigation.

We pause to note that appellees' ignorance of the law argument does not persuade us. In a footnote in *Heron*, 361 Md. at 272 n. 13, 761 A.2d 56, the Court cited our decision in *Williams v. Montgomery County*, 123 Md.App. 119, 716 A.2d 1100, *aff'd.*, 352 Md. 310, 721 A.2d 989 (1998), for the proposition that the Court of Special Appeals "has specifically rejected ignorance of the law requiring notice as good cause." But, the *Heron* Court indicated that Maryland has not adopted that position. *See id.*; *see also Hargrove*, 146 Md.App. at 467, 807 A.2d 149. Moreover, in *Rios*, 386 Md. at 141–42 n. 18, 872 A.2d 1, the Court reaffirmed that the question remains open as to whether ignorance of the statutory notice requirement constitutes good cause. Notably, however, appellant never asserted ignorance of the law as his excuse for the untimely notice.

The court below determined that appellant "failed to meet his burden of demonstrating good cause." It pointed to the lack of evidence of any continuing communications with I.A.D. after August 1, 2001, or of an "ongoing" police investigation, which would have "warrant[ed] [appellant's] lack of diligence." We are not persuaded that the trial court abused its discretion with regard to its good cause ruling.

As we indicated, good cause is determined by "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron*, 361 Md. at 271, 761 A.2d 56; *see Madore*, 34 Md.App. at 345, 367 A.2d 54. And, it is within the trial court's discretion to determine whether good cause exists to waive the notice requirement. *Heron*, 361 Md. at 270, 272, 761 A.2d 56. In our view, appellant's lack of follow up with I.A.D. belies any justification for his delay in giving notice to the County. Based on Dischinger's alleged representation to appellant, it may have been reasonable for appellant to delay any action for a period of months, but not years. Appellant simply took no action at all; his inaction did not amount to the requisite diligence of any ordinarily prudent person.

In sum, to justify his own inaction for such an extended period of time, appellant relied on a single comment allegedly made by Dischinger in July of 2001. He identified *no* other action or conduct by the police in the months that followed. Yet, the Sergeant's comments did not suggest that appellant should remain idle indefinitely, without further pursuing his complaint. Given appellant's prolonged failure to act or even inquire, the court below did not abuse its discretion in regard to its good cause ruling.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**